**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-18-1012-SFL |
| | CC-18-1031-SFL |
| FRANCISCO TINAJERO, JR. and JACQUELINE SANCHEZ, | (Related) |
| | Bk. No. 2:17-bk-15755-BR |
| Debtors. | |
| | Adv. No. 2:17-ap-01355-BR |
| FRANCISCO TINAJERO, JR., | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| BLANCA AGUIRRE; JOSE M. ZAVALA, | |
| Appellees. | |
| GLENN WARD CALSADA, | |
| Appellant. | |

Argued and Submitted on September 27, 2018
at Los Angeles, California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Filed – October 11, 2018

Appeals from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

———————

Appearances:    Glenn Ward Calsada argued pro se and for appellant
                Francisco Tinajero, Jr.; Steve Lopez argued for appellees
                Blanca Aguirre and Jose M. Zavala.

———————

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Creditors Blanca Aguirre and Jose M. Zavala obtained a judgment against debtor Francisco Tinajero, Jr., in California state court for specific performance of a real estate purchase and sale agreement. Aguirre and Zavala also obtained a judgment for their attorney's fees and costs. After Tinajero and his spouse Jacqueline Sanchez commenced their joint chapter 7[1] bankruptcy case, Aguirre and Zavala sued Tinajero to except the judgment debt from discharge under § 523(a)(2)(A) based on allegations of fraud. The bankruptcy court ultimately granted the creditors' summary

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure. All "Local Rule" references are to the Local Rules of the United States Bankruptcy Court for the Central District of California.

judgment motion, determining that there was no genuine issue of material fact because of the preclusive effect of the state court judgments.

The bankruptcy court noted that the state court had made numerous findings of fraudulent conduct by Tinajero. But the state court granted the creditors specific performance and awarded them their fees based on Tinajero's breach of the purchase and sale agreement. Nothing in the record indicates that any relief was granted based on the state court's fraud findings. Because the fraud findings were not essential to the state court judgments, those findings are not entitled to preclusive effect. Furthermore, there is nothing in the state court record tying the debt Tinajero incurred – the award of attorney's fees and costs – to Tinajero's fraud rather than breach of contract. Accordingly, we REVERSE the bankruptcy court's grant of summary judgment in favor of Aguirre and Zavala, and we REMAND for further proceedings in the creditors' nondischargeability action.

Tinajero's attorney Glenn Ward Calsada separately appeals from an order sanctioning him $300 for not complying with the bankruptcy court's pretrial procedures as specified in its Local Rules. Nothing Calsada has said in his appeal brief persuades us that the bankruptcy court committed reversible error in sanctioning Calsada. Therefore, we AFFIRM the sanctions order.

## FACTS

In April 2013, Aguirre and Zavala entered into an agreement with

Tinajero for their purchase of his residence located in Whittier, California. Tinajero refused to close the sale. In June 2013, Aguirre and Zavala commenced a lawsuit against Tinajero in the Los Angeles County Superior Court. Their complaint sought specific performance of the agreement.[2] In the alternative, the complaint requested damages for breach of contract and for breach of the implied covenant of good faith and fair dealing. The final cause of action in the complaint was for a declaration of the parties' respective rights under the agreement. Thus, on its face, each cause of action sought relief for breach of contract.

In July 2014, Sanchez filed a complaint in intervention, asserting that the residence was community property. According to Aguirre and Zavala, Sanchez's complaint provided their first notice that Sanchez was Tinajero's spouse and that she claimed an interest in the residence. In response to the complaint in intervention, in August 2014, Aguirre and Zavala filed a cross complaint in intervention against Tinajero and Sanchez seeking damages for fraud, negligent misrepresentation and negligent infliction of emotional distress, all largely based on Tinajero's failure to disclose his marriage to Sanchez and her alleged interest in the residence. Aguirre and Zavala

---

[2] Neither party provided in their excerpts of record copies of the two complaints that Aguirre and Zavala filed in the state court action. Even so, copies of both of these complaints were presented to the bankruptcy court as part of the creditors' papers in support of the summary judgment motion. Accordingly, we will take judicial notice of their filing and contents. *See Rivera v. Curry (In re Rivera)*, 517 B.R. 140, 143 n.2 (9th Cir. BAP 2014).

4

alleged that, through his real estate agent, Tinajero represented that he was unmarried, that he was the sole owner of the residence, and/or that he was authorized to sell the residence. They further alleged that Tinajero concealed the fact that he was married and that, when the sales agreement was signed, a temporary restraining order prohibited him from selling the residence. As Aguirre and Zavala put it, Tinajero misrepresented and concealed the true state of affairs regarding the residence in order to induce them to enter into the agreement. According to Aguirre and Zavala, as a result of Tinajero's fraudulent conduct, they were entitled to recover consequential and punitive damages.[3]

In July 2015, after a bench trial, the state court entered a judgment for specific performance in favor of Aguirre and Zavala and against Tinajero. The judgment made clear that the grant of specific performance was based on Tinajero's failure and refusal to convey the residence to Aguirre and Zavala as required by the agreement. For instance, the judgment references the parties' agreement, Aguirre's and Zavala's performance of all conditions precedent under the agreement, and their tender of the consideration ($300,000) under the agreement. Significantly, the specific

---

[3] Absolutely nothing in the record or in the parties' briefs indicates that Aguirre and Zavala recovered any judgment on the causes of action stated in their cross-complaint in intervention. As explained below, Aguirre and Zavala bore the burden to establish all of the elements of issue preclusion. Thus, the absence of any judgment on their tort-based causes of action is a critical gap in their position.

performance judgment did not mention at all the cross-complaint in intervention or Tinajero's fraud.

The state court also issued a statement of decision contemporaneously with the judgment. Unlike the judgment for specific performance, the statement of decision repeatedly referenced Tinajero's fraudulent conduct regarding ownership of the property and his marital status. The statement of decision also determined that Tinajero knowingly misled Aguirre and Zavala in order to induce them to enter into the agreement and that they justifiably relied on Tinajero's fraudulent conduct in entering into the agreement. However, nowhere in the judgment or the statement of decision was there any finding that Tinajero's fraud resulted in damages to Aguirre and Zavala. Although the statement of decision determined that Tinajero "is liable" for his fraudulent conduct, no damages were awarded for fraud. Rather, Aguirre and Zavala, acting through their attorney, "waived tort damages in favor of a judgment for specific performance." Discussing Aguirre's and Zavala's election to recover specific performance, the court explained:

> The concept of election of remedies in breach of contract actions is embodied in the Civil Code, section 3300, which provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the

> detriment proximately caused thereby, *or* which in the ordinary course of things, would be likely to result therefrom."
>
> However, an aggrieved buyer may elect for a court order that directs the breaching party to perform his/her obligations under the contract. As embodied in Civil Code section 3387, "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation."

Statement of Decision (July 28, 2015) at 16:16-24 (parenthetical information omitted).

Accordingly, the state court awarded specific performance "based on the enforceable contract that is sufficiently certain in its terms . . . ; adequate consideration, and a just and reasonable contract as testified to by Plaintiffs and Defendant; Plaintiffs' full performance by opening escrow; and Defendant Tinajero's clear breach of contract." Moreover, the statement of decision never mentioned Tinajero's fraud as a basis for specific performance. To the contrary, the statement of decision specified that the remedy of specific performance was being granted based on "Tinajero's clear breach of contract."[4]

---

[4] At oral argument in this appeal, Aguirre and Zavala insisted that the state court awarded specific performance based on Tinajero's fraud. As indicated above, the record does not support this assertion. On occasion, California courts apparently have granted

(continued...)

7

Finally, the statement of decision concluded that Aguirre and Zavala were entitled to recover their attorney's fees and costs. But neither the specific performance judgment nor the statement of decision determined the amount of fees and costs to be awarded. Instead, they left the amount of fees and costs for later determination. In addition, neither the statement of decision nor the specific performance judgment explained the legal basis for awarding Aguirre and Zavala their attorney's fees.

Shortly thereafter, in August 2015, a different state court judge entered an order granting Aguirre's and Zavala's motion for attorney's fees and costs, citing Cal. Civil Code § 1717 and Cal. Civil Procedure Code

---

[4](...continued)
specific performance as a remedy for fraud, or to prevent fraud, with respect to the transfer of real property. *See, e.g., Tohler v. Folsom*, 1 Cal. 207, 211–12 (1850); *Williams v. Coleman*, 70 Cal. App. 400, 404–05 (1924). Nonetheless, under California law, specific performance almost always requires breach of a contract – and not fraud – as a prerequisite. *See* 12 Harry D. Miller & Marvin B. Starr, Cal. Real Estate § 40:17 (4th ed. 2017) ("Specific performance is a remedy for performance of a contract so the party seeking enforcement of the contract must plead facts that establish a right to recover for breach as well as the right to receive the equitable remedy."); 5 Witkin, Cal. Proc. 5th Pleadings § 784 (2008) ("Specific performance is an alternative remedy; the cause of action is for breach of contract."). Aguirre and Zavala also argued that *Behniwal v. Mix*, 147 Cal. App. 4th 621 (2007), supported the proposition that Tinajero's fraud was the basis for the state court's specific performance judgment. *Behniwal* stands for the unrelated proposition that an award of attorneys' fees and costs obtained by the plaintiff after obtaining a judgment for specific performance was not incidental to the specific performance judgment and therefore could not be offset against the purchase price owed for the subject real property. *Id.* at 630-31. In any event, the record here unequivocally establishes that the state court granted Aguirre and Zavala specific performance based on Tinajero's breach of contract and not based on his fraud.

8

§ 1032. The judge wrestled with the fact that neither the statement of decision nor the specific performance judgment specified the legal basis for the fee award, and also was troubled that **the agreement** on which the fee award presumably was based required mediation as a prerequisite to any entitlement to fees. No mediation took place. Notwithstanding its expression of some doubt regarding their entitlement to fees in light of the failure to satisfy the mediation prerequisite, the second judge concluded that it had no power to disturb the prior judge's conclusion in the statement of decision and in the specific performance judgment that Aguirre and Zavala were entitled to recover their fees and costs. As a result, in November 2015, the state court entered a judgment awarding Aguirre and Zavala their attorney's fees and costs in the aggregate amount of $52,477.20.

Tinajero apparently did not appeal either the specific performance judgment or the judgment for fees and costs. Tinajero and Sanchez filed their chapter 7 petition in May 2017.[5] Aguirre and Zavala then commenced their nondischargeability action against Tinajero in July 2017, seeking to have the judgment debt for fees and costs declared nondischargeable under § 523(a)(2)(A).

---

[5] This was not Tinajero's first bankruptcy filing. He previously commenced a bankruptcy case in 2013, which was dismissed for failure to attend the § 341(a) meeting of creditors in December 2013.

After hearing Aguirre's and Zavala's summary judgment motion, the bankruptcy court concluded that, based on the state court's findings in the statement of decision, Tinajero was precluded from relitigating the fraud claim and granted Aguirre and Zavala summary judgment on their § 523(a)(2)(A) claim. On January 8, 2018, the bankruptcy court entered its judgment excepting from discharge the $52,477.20 state court judgment debt Tinajero owed to Aguirre and Zavala. Tinajero timely appealed.

In a separate order entered on January 4, 2018, the bankruptcy court sanctioned counsel for both parties $300 each for their respective failures to follow the court's pretrial procedures in compliance with Rule 7016 and Local Rule 7016-1. Calsada timely appealed from that order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error when it granted summary judgment against Tinajero based on the preclusive effect of the state court judgments?

2. Did the bankruptcy court commit reversible error when it sanctioned Calsada $300 based on his failure to comply with the court's pretrial procedures?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review an issue under the de novo standard of review, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *In re Lopez*, 367 B.R. at 103. We also review for an abuse of discretion the bankruptcy court's Local Rules-based sanction. *See Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112 (9th Cir. BAP 2017).

A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A.    Legal Standards Governing Summary Judgment.**

Under Civil Rule 56(a), made applicable in adversary proceedings by

Rule 7056, the court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine if, on the record presented, a reasonable trier of fact could find in favor of the non-moving party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)). A fact is "material" if it might affect the outcome of the case. *Id.* Once the moving party has met its initial burden, the non-moving party must show specific facts establishing the existence of genuine issues of fact for trial. *Anderson*, 477 U.S. at 256.

B.    **Tinajero's Arguments On Appeal.**

**1. Waiver Arguments.**

Tinajero contends that Aguirre and Zavala waived any claim they had for tort damages in two different ways: first, by seeking relief from stay in his 2013 chapter 7 bankruptcy case solely for the purpose of obtaining a specific performance judgment; and second, by making an election in the state court action for specific performance in lieu of compensatory damages.

In support of his relief from stay waiver argument, Tinajero relies on *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932 (9th Cir. 2009). In relevant part, *In re Wardrobe* held that relief from stay granted to proceed with ongoing nonbankruptcy litigation generally applied only to claims made in

12

the litigation at the time relief from stay was sought and obtained. *Id.* at 935-37. *In re Wardrobe* further held that pursuit of claims added to the nonbankruptcy litigation after entry of the relief from stay order violated the automatic stay, and any resulting judgment on those claims was void. *Id.* But *In re Wardrobe* is inapplicable here. Aguirre and Zavala added their tort claims in the state court action in 2014, well after the automatic stay in Tinajero's 2013 bankruptcy case terminated by virtue of the December 2013 dismissal of that case.

As for Tinajero's election of remedies waiver argument, he has not cited any law actually supporting his position that Aguirre and Zavala waived their right to challenge the dischargeability of the judgment debt for fees and costs under § 523(a)(2)(A) as a result of their election of specific performance in lieu of compensatory damages. Our research leads us to the opposite conclusion: an election of remedies does not by itself constitute a waiver of any particular claim; it only limits the remedy that a plaintiff may recover on account of that claim. *See Union Oil Co. of Cal. v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 136 (2008); *see also* 58 Cal. Jur. 3d Specific Performance § 4 (explaining operation of election of remedies in the specific performance context). In contrast, a waiver occurs only when the party charged intentionally relinquishes a known right with knowledge

of the facts. *See Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 31 (1995).[6]

While Aguirre and Zavala voluntarily elected to receive specific performance in lieu of compensatory damages on account of their breach of contract claim, there is little or no connection between this action and whether the judgment debt for attorney's fees and costs arose from fraud. Whatever connection (if any) there might be between the election of remedies and the judgment for fees and costs, Tinajero has not factually or legally established that Aguirre and Zavala intentionally waived anything with respect to their entitlement to attorney's fees. *See id*.

---

[6] Our understanding of the election of remedies doctrine is consistent with the policy considerations underlying the doctrine. As explained by the California Court of Appeal:

> The election of remedies doctrine is based on equitable estoppel. The doctrine generally holds that if a plaintiff elects a particular remedy in lieu of an alternative and inconsistent remedy and thereby gains an advantage to the detriment of the defendant, the plaintiff thereafter is precluded from pursuing the alternative remedy. The doctrine applies only if the defendant suffered a substantial injury as a result of the plaintiff's initial election of remedies. The election of remedies doctrine ordinarily does not preclude a plaintiff who has pled alternative remedies from changing his or her election before the defendant has suffered an injury from the prior election through the application of res judicata or a satisfaction of judgment.

*Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, 759 (2007).

**2. Issue Preclusion Arguments.**

**a. Legal Standards Governing Issue Preclusion.**

Issue preclusion applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Because the relevant judgment was rendered under California law, full faith and credit principles require us to apply California issue preclusion law. *See* 28 U.S.C. § 1738; *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003).

> Under California law, issue preclusion is available if:
>
> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. at 462 (citing *Lucido v. Sup. Ct.*, 51 Cal. 3d 335, 341 (1990)).

The party asserting issue preclusion has the burden of proving all of the elements necessary to establish its availability. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995). "To sustain this burden, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Id.* Any reasonable doubt as to what was decided in the prior action should be resolved against the application of issue preclusion. *Id.*

15

Even when the party asserting issue preclusion establishes the five threshold factors, application of issue preclusion is discretionary rather than automatic. *In re Lopez*, 367 B.R. at 107-08. In exercising that discretion, the trial court ordinarily needs to consider the circumstances of the particular case and whether application of the doctrine in that case is fair and consistent with the policies underlying the doctrine. *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 919–20 (9th Cir. 2001); *In re Lopez*, 367 B.R. at 107-08; *see also* Christopher Klein et al., Principles of Preclusion & Estoppel in Bankruptcy Cases, 79 AM. BANKR. L. J. 839, 855 (2005).

### b. Application Of Issue Preclusion And The Requirement That The Issue Was Necessarily Decided.

Tinajero generally argues that the bankruptcy court erred when it found that all of the elements for issue preclusion were present in this case. We agree. There is a fundamental and overarching problem with the bankruptcy court's application of issue preclusion: there is no indication in the record that any of the state court's fraud findings were essential to the judgment. Simply put, the first tribunal's determination of an issue is not entitled to preclusive effect in a subsequent action unless the determination of that issue was "necessary to the prior judgment." *Four Star Elec., Inc. v. F & H Constr.*, 7 Cal. App. 4th 1375, 1379–80 (1992) (citing numerous California cases); *see also In re Simmons' Estate*, 64 Cal. 2d 217, 223 (1966) ("Insofar as the court purported to establish matters not essential to the

16

judgment, its determinations are not binding on the parties in a subsequent action on a different cause of action.").

The Restatement (Second) of Judgments § 27 identifies this requirement and explains the reasoning behind it:

> **h. Determinations not essential to the judgment.** If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27, cmt. h (1982).[7]

Here, the record reflects that the specific performance judgment and the judgment for fees and costs arose from Tinajero's breach of the sales agreement. In other words, the state court's fraud findings were not necessary to either judgment. Accordingly, Aguirre and Zavala did not meet their burden to establish that the state court's fraud findings were

---

[7] Significant to Aguirre's and Zavala's argument that specific performance could have been awarded for fraud, the Restatement further explains that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Id.* at cmt. i. In fact, illustration 15 accompanying the Restatement commentary seems to directly refute Aguirre's and Zavala's argument that the mere possibility specific performance could have been awarded for fraud justifies the application of issue preclusion. *See id.* at illus. 15.

entitled to preclusive effect.

### c. Causation.

Tinajero further claims the state court's judgments and findings were insufficient to establish all of the elements of nondischargeable fraud for issue preclusion purposes. While he makes this argument in numerous different ways, Tinajero emphasizes two critical points: (1) there is nothing in the record indicating that the state court made any finding that his fraudulent conduct (as opposed to his breach of contract) caused Aguirre and Zavala to incur any damages; and (2) there is nothing in the record tying the judgment for fees and costs to Tinajero's fraud.

Both of Tinajero's points relate to the issue of causation. Causation is an essential element to a fraud judgment under both California law and under § 523(a)(2)(A). *See Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 382-83 (9th Cir. BAP 2011) (identifying fraud elements under California law); *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009) (identifying same fraud elements under § 523(a)(2)(A)).

Appropriate causation findings must determine the existence of: (1) causation in fact, which means that the plaintiff's reliance on the misrepresentations or omissions was "a substantial factor" in determining the course of conduct leading to the loss; and (2) legal causation, which means that the creditor's loss reasonably could be expected to result from the reliance. Restatement (Second) of Torts §§ 546, 548A ("Restatement");

18

*see also OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 870-75 (2007) (relying on the Restatement to resolve causation issues). Put more bluntly, "[a] damage award for fraud will be reversed where the injury is not related to the misrepresentation." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1252 (1991) (citing *Gray v. Don Miller & Assocs.*, 35 Cal. 3d 498, 504 (1984)).

Here, the state court did not make any finding that Tinajero's fraud caused Aguirre and Zavala any injury. Nor did the state court in any way link the judgment for fees and costs to Tinajero's fraud. To the contrary, to the extent the state court's fee award references the legal basis for the award, it references contractual provisions from the sales agreement. It also is worth noting that Aguirre and Zavala substantively prevailed on their complaint for specific performance, which in turn was based on their breach of contract claim. Thus, to the extent the judgment for fees and costs depends upon Aguirre and Zavala being the prevailing party, they became the prevailing party as a result of their contract claim and not their fraud claim. *See generally* Cal. Civ. P. Code § 1032(b) (providing for recovery of litigation costs by prevailing party); Cal. Civ. Code § 1717(a) (authorizing prevailing parties in contract actions to recover their attorney's fees pursuant to contractual provision).

In light of the absence of any finding that Aguirre's and Zavala's fees and costs arose from Tinajero's fraud, and the absence of any apparent link

19

between the fraud and the fees and costs, the bankruptcy court committed reversible error when it ruled that the issue preclusive effect of the state court's judgments and findings conclusively established the causation element necessary for Aguirre's and Zavala's § 523(a)(2)(A) claim.[8]

## C. Calsada's Appeal From The Sanctions Order.

In his separate appeal, Calsada challenges the imposition of sanctions against him. The bankruptcy court imposed $300 in sanctions against counsel for both parties because both failed to comply with Rule 7016 and Local Rule 7016-1, concerning the preparation and filing of the joint pretrial stipulation.

Local Rule 7016-1(b)(1)(A) generally requires the attorneys for both

---

[8] Our holding that the bankruptcy court incorrectly applied issue preclusion in favor of Aguirre and Zavala is not meant to suggest that Tinajero is entitled to judgment as matter of law on Aguirre's and Zavala's nondischargeability claim. We express no opinion regarding whether and how Aguirre and Zavala can prove on remand that their claim for fees and costs arose from Tinajero's fraud for purposes of their claim under § 523(a)(2)(A). *Compare Brown v. Felsen*, 442 U.S. 127, 133-37 (1979) (holding that claim preclusion did not bar recipient of state collection judgment from trying debtor's fraud as part of exception to discharge proceeding in subsequent bankruptcy case), *with Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995) (issue preclusion arising from state court judgment applies in subsequent nondischargeability action); *see also Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (holding that § 523(a)(2)(A) excepts from discharge any liability flowing from a debtor's fraudulent conduct); *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 6-7 (9th Cir. BAP 2008) (holding that statutory disgorgement of compensation paid to unlicensed contractor did not arise from contractor's fraud and hence was not excepted from discharge).

parties to work together to prepare a pretrial stipulation.[9] In relevant part, if the plaintiff's counsel fails to timely serve a draft pretrial stipulation on the defendant's counsel in accordance with Local Rule 7016-1(c)(2),[10] counsel for the defendant is required to file, no later than fourteen days before the pretrial conference, a declaration advising the bankruptcy court of plaintiff's failure to timely prepare and serve the pretrial stipulation. *See* Local Rule 7016-1(e)(2).[11] Either counsel may be sanctioned for failure to

---

[9] Local Rule 7016-1(b)(1)(A) provides:

In any adversary proceeding, unless otherwise ordered by the court (or if ordered in a contested matter), attorneys for the parties (or parties, if not represented by counsel) must prepare a written pretrial stipulation approved by counsel for all parties.

[10] Local Rule 7016-1(c)(2) provides:

Unless otherwise ordered by the court, plaintiff must serve the proposed pretrial stipulation in such manner so that it will actually be received by the office of counsel for all other parties (or parties, if not represented by counsel) not later than 4:00 p.m. on the 7th day prior to the last day for filing or lodging (depending upon the presiding judge's procedures) the proposed pretrial stipulation.

[11] Local Rule 7016-1(e)(2) provides:

**Other Parties**. Any party other than plaintiff who has not received plaintiff's proposed pretrial stipulation within the time limits set forth in subsection (c) of this rule must prepare, file, and serve at least 14 days prior to the trial or pretrial conference, if one is ordered, a declaration attesting to plaintiff's failure to prepare and serve a proposed pretrial stipulation in a timely manner.

comply with these requirements. Local Rule 7016-1(f).[12]

Notwithstanding the above, bankruptcy courts generally should not impose sanctions based on Local Rules violations without first considering a number of factors. *See In re Tukhi*, 568 B.R. at 113; *Lee v. Roessler–Lobert (In re Roessler–Lobert)*, 567 B.R. 560, 573-74 (9th Cir. BAP 2017). In both *Tukhi* and *Roessler–Lobert*, we relied on *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989), in evaluating the propriety of the bankruptcy courts' sanctions-based dismissal of adversary proceedings. *See In re Tukhi*, 568 B.R. at 113; *In re Roessler–Lobert*, 567 B.R. at 573-74. In relevant part, *Zambrano* concerned the district court's decision to impose roughly $3,700 in monetary sanctions against counsel. *Zambrano*, 885 F.2d at 1476. The

---

[12] Local Rule 7016-1(f) provides:

**Sanctions for Failure to Comply with Rule**. In addition to the sanctions authorized by F.R.Civ.P. 16(f), if a status conference statement or a joint proposed pretrial stipulation is not filed or lodged within the times set forth in subsections (a), (b), or (e), respectively, of this rule, the court may order one or more of the following:

> (1) A continuance of the trial date, if no prejudice is involved to the party who is not at fault;
> (2) Entry of a pretrial order based conforming party's proposed description of the facts and law;
> (3) An award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault; and/or
> (4) An award of non-monetary sanctions against the party at fault including entry of judgment of dismissal or the entry of an order striking the answer and entering a default.

district court imposed these sanctions because counsel failed to obtain admission to the local district court bar, in violation of the court's local rules. *Id.* at 1475-76. *Zambrano* articulated the standards that should govern the imposition of sanctions under both inherent power and local rules. *Id.* at 1478-79. When imposing sanctions under a local rule, such sanctions must be: (1) consistent with governing statutes and court rules; (2) necessary for the court to conduct its business; and (3) closely connected to the need to preserve the integrity of the court's docket. *Id.* at 1480.

Citing *Zambrano*, we held in both *Tukhi* and in *Roessler–Lobert* that, when the sanction is based on local rule violations, the bankruptcy court must examine the state of mind of the rule violator and find a level of culpability higher than mere negligence, "such as 'willfulness, bad faith, recklessness, or gross negligence' or a 'repeated disregard of court rules.'" *In re Tukhi*, 568 B.R. at 113 (citing *In re Roessler–Lobert*, 567 B.R. at 573). We further recognized that the sanction needed to be "proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power." *In re Tukhi*, 568 B.R. at 113 *(citing Zambrano*, 885 F.2d at 1480).[13]

---

[13] We also held in *Tukhi* and *Roessler–Lobert* that, when the sanction at issue is a dismissal, the bankruptcy court additionally needed to consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits[;] and (5) the availability of less drastic sanctions." *In re Tukhi*, 568

(continued...)

Even though the bankruptcy court, here, did not specifically make findings concerning each of these factors, the record is fully developed and supports the bankruptcy court's imposition of relatively minor monetary sanctions. At the time the bankruptcy court heard Aguirre's and Zavala's summary judgment motion, the court also had scheduled a pretrial conference. When the bankruptcy judge asked both sides at the hearing why neither of them had filed a joint pretrial stipulation, both Calsada and his opposing counsel confirmed that they had not prepared or filed a pretrial stipulation. Furthermore, Calsada admitted to the bankruptcy court that he was aware of what the Local Rules required in terms of pretrial procedure and offered no explanation or excuse for his noncompliance with the Local Rules. These undisputed facts establish the willfulness of Calsada's noncompliance. *See generally ZiLOG, Inc. v. Corning*

---

[13](...continued)

B.R. at 113 (citing *In re Roessler–Lobert*, 567 B.R. at 568, 573–74). Most of these additional factors bear little relevance to the minor monetary sanctions imposed herein, and Calsada has not attempted to raise any of these factors as issues on appeal. Although the Ninth Circuit generally has followed *Zambrano* in cases involving even relatively minor monetary sanctions, it has not insisted upon consideration of these additional factors. *See, e.g., Washburn v. Morgado*, 332 F. App'x 380, 382–83 (9th Cir. 2009) (affirming sanctions of $250 where counsel "continually disregarded the case management rules of the court and was grossly negligent in complying with discovery orders"); *Ali v. Mukasey*, 277 F. App'x 741, 742 (9th Cir. 2008) (vacating and remanding for rehearing on the imposition of $1,000 in sanctions, with an instruction for the district court to "determine whether the sanctioned party's conduct amounted to 'recklessness, gross negligence, repeated-although unintentional-flouting of court rules, or willful misconduct'").

*(In re ZiLOG, Inc.)*, 450 F.3d 996, 1007, 1008 (9th Cir. 2006) (stating that a violator acts willfully when he or she knowingly violates a court rule or order).

Nor has Calsada attempted on appeal to offer any explanation or excuse for his noncompliance. Instead, he asserts that he was not "at fault." According to Calsada, he was not at fault because it was plaintiffs' duty to prepare and circulate the draft pretrial stipulation. At first blush, there is some superficial appeal to Calsada's position. As indicated above, the Local Rules imposed on the plaintiffs' counsel the principal obligation of preparing and serving on Calsada the proposed pretrial stipulation. *See* Local Rule 7016-1(c)(2). Plaintiffs' counsel failed to comply with this obligation. The bankruptcy court commented at the hearing that, upon plaintiffs' counsel's failure, Calsada unilaterally should have filed a pretrial stipulation.  The Local Rules, however, do not appear to require defendant's counsel to unilaterally file a pretrial stipulation when plaintiffs' counsel fails to timely prepare and serve the draft stipulation. *Compare* Local Rule 7016-1(d)(2) *with* Local Rule 7016-1(e)(2). Rather, as set forth above, the Local Rules required defendant's counsel to file and serve a declaration of plaintiffs' noncompliance. *See id.*

Yet, Calsada's noncompliance with the Local Rules still was significant in the course of the proceedings. If Calsada had filed the required declaration of noncompliance, it might have spurred plaintiffs'

25

counsel to belatedly take the steps necessary to move the pretrial process forward. At a minimum, it would have given the bankruptcy court notice that the pretrial process was faltering and would have afforded the court an opportunity, in advance of the hearing, to address or attempt to rectify plaintiffs' counsel's noncompliance. The bankruptcy court correctly found that Calsada was not in compliance with the Local Rules. In fact, as noted above, Calsada conceded he was not in compliance. Therefore, we cannot say that the court's finding that Calsada was "at fault" was illogical, implausible or without support in the record.

The only other argument Calsada has made in support of his challenge to the sanctions order concerns the proportionality of the sanctions award to the offense. Citing *Zambrano*, Calsada claims that the bankruptcy court's $300 sanctions award against him should be reversed because it was not proportionate to the offense and was not commensurate with the principles of restraint and dignity inherent in the judicial power to sanction. Calsada reasons that proportionality and restraint were absent here because he was not at fault and because the need for a pretrial conference was mooted by the subsequent granting of summary judgment in favor of Aguirre and Zavala.

We disagree. As set forth above, the bankruptcy court correctly found that Calsada was "at fault" because of his admitted noncompliance with Local Rule 7016-1(e)(2). And, as we further noted above, he has not offered

26

any basis to conclude that this finding was clearly erroneous. As for the fact that the need for a pretrial conference was mooted by the granting of summary judgment, the bankruptcy court was aware of the status of the summary judgment motion when it imposed the sanctions. The bankruptcy court imposed the sanctions at the same time it heard and determined the summary judgment motion. Even so, the harm resulting from both parties' noncompliance with their respective pretrial obligations already had occurred by this point. As the bankruptcy court indicated at the hearing, the parties' noncompliance hampered its preparation for the hearing. Thus, the subsequent granting of summary judgment and the obviation of the pretrial conference simply do not support Calsada's claim that the $300 sanction award was disproportionate to the offense and inconsistent with judicial restraint.

In addition, the hearing transcript indicates that the bankruptcy court gave some thought to restraint and to the amount and proportionality of the award. As the bankruptcy court noted at the hearing, in its view, it was being "gentle" on the parties. It further commented that, in its view, the noncompliance would have justified even more severe sanctions. Nothing Calsada has said on appeal indicates that the court's views on restraint and proportionality were clearly erroneous.

Calsada's extremely short appellate argument challenging the sanctions order does not specifically and distinctly raise any other issues

concerning the imposition of sanctions. Thus, to the extent any such issues might have been raised, Calsada has forfeited them. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

In sum, we reject as meritless both of Calsada's arguments on appeal. While the bankruptcy court certainly was not obliged under these circumstances to impose any sanctions, we are not persuaded that the court abused its discretion by imposing the $300 sanction award against Calsada.

## CONCLUSION

For the reasons set forth above, we REVERSE the bankruptcy court's grant of summary judgment, and we remand for further proceedings in the nondischargeability action. We AFFIRM the bankruptcy court's sanctions order against Calsada.